Okay, back on the record for Peterson v. Gonzales, Ms. Chang, I think in case you don't know, we've granted the motion so you can argue. Thank you. Good morning, may it please the Court. I'm Jennifer Chang, Court-Appointed Pro Bono Counsel for Petitioner Joseph Peterson. There are two issues in this petition for review. The first is that Mr. Peterson's conviction plainly does not constitute an aggravated felony under this Court's precedence. And the second issue is that Mr. Peterson's alienage has not been proven by the government. First, the Utah statute under which Mr. Peterson was convicted does not meet the generic definition of a theft offense set forth by this Court en banc in Corona Sanchez. Under Corona Sanchez, there are three elements of a theft offense. Those elements are, first, a taking of property, second, without consent, and third, with the criminal intent to deprive the owner of the rights and benefits of ownership. This Court has repeatedly held that the criminal intent element is a separate requirement, and without that element, the offense cannot constitute an aggravated felony theft offense. Don't you have to have intent to attempt under the statute? I don't believe so, Your Honor. The Petitioner pled guilty to attempt to possession of a vehicle that he knew or had reason to believe was stolen. And the intent to attempt is separate from the criminal intent to deprive the owner of the rights and benefits of ownership. The requirement under Corona Sanchez is a specific intent of, again, of depriving the owner of the rights and benefits of ownership. And under this statute, under the Utah statute, you can be convicted for just attempting to possess a vehicle as long as you had reason to believe that the vehicle was stolen or unlawfully taken. And that does not satisfy the Corona Sanchez requirement of criminal intent. So the question, both parties in this appeal agree that Mr. Peterson pled guilty to subsection 2 of the Utah criminal statute at issue here. And that's reproduced at page 19 of our opening brief. That statute makes it unlawful for a person to have in his possession any motor vehicle that he knows or has reason to believe was unlawfully taken or stolen. The question under Corona Sanchez is whether the full range of conduct reached by the Utah statute matches the categorical definition of theft. What's missing here is the third element under Corona Sanchez. The Utah statute is virtually identical to statutes held not to constitute theft offenses by this court in cases like Horta-Guevara and Navarrez-Martinez. In Horta-Guevara, for example, Judge Rimer held for this court that the petitioner's Arizona theft conviction did not match the generic definition of a theft offense set forth in Corona Sanchez because intent is required and four subparts of that Arizona statute did not require intent. One of the four subparts under that Arizona statute is nearly identical to the statute we have here. Subpart five under the Arizona statute in Horta-Guevara included the element of knowledge or having reason to know that the property was stolen. The court found that that offense did not qualify as a theft offense even though, like the Utah statute here, it included the element of knowledge or reason to know or reason to believe. Thus, if subpart five in Horta-Guevara did not constitute a theft offense under Corona Sanchez, then a fortiori the Utah statute here cannot constitute a theft offense. Similarly, in Navarrez-Martinez, this court held that an Arizona statute requiring knowledge or reason to know the property was stolen did not satisfy the generic definition because it lacked the intent element. The court held that... What about the attempt part of this statute? That's what he pled to, attempt. Under Utah law, does not that include an element of intent? I argue that attempt to possess something is different from whether he intended to deprive the rightful owner of that item of the rights and benefits of ownership. Under this statute, Mr. Peterson might not have known, in fact, that the motor vehicle that he possessed was stolen. If you don't even know that the motor vehicle that you possessed was stolen, I don't see how you can intend to deprive the rightful owner of the rights and benefits of ownership. Well, isn't an element of the underlying crime that he knows that it's been stolen? No, Your Honor. In the Utah statute under subsection 2, the requirement is knowledge or reason to know, or reason to believe, excuse me, that the item was stolen. In other words, Mr. Peterson can be convicted under that statute if he merely has reason to know. If a hypothetical, objective person in his position should have believed that the motor vehicle was stolen. Is this a simple or straightforward legal analysis, just look at the offense that the plea was entered to and stack it up against the requirements of the act, or would the I.J. or this Court look to the underlying facts? This Court. Or merely look to the underlying facts? No, Your Honor. This Court cannot look to the underlying facts. The Court can look at judicially noticeable documents such as the record of conviction or the information, for example, the one-count information, which is at administrative record page 105 in this case. But the Court cannot look at the underlying facts. And I believe that in the record there is no information about the underlying facts aside from that one-count information at administrative record page 105. So all we know in this case is that Mr. Peterson pled guilty to attempt of the subsection 2, which involves, again, knowledge or reason to know that the reason to believe, excuse me, that the vehicle was stolen. I think that because Mr. Peterson could have been convicted under this statute, the question under Cronus Sanchez is whether the full range of conduct reached under the statute matches the categorical definition of theft. Because someone can be convicted under this statute with just merely having reason to know that the property was stolen or reason to believe that the property was stolen, the critical element of criminal intent was entirely lacking in this case. Mr. Peterson's second claim in this appeal involves the founding rule, which is 8 U.S.C. 1401F. Under the founding rule, a person of unknown parentage found in the United States under the age of 5 years is a U.S. citizen by birth, unless it can be shown prior to the time the person turns 21 that he was not, in fact, born in the United States. The two relevant questions under the founding rule are, one, whether the individual has satisfied the statutory predicates of unknown parentage and being found in the United States before the age of 5, and two, whether, if so, the government has met its burden of proving that the individual's alienage had been shown prior to the time the person turned 21. The only fair reading of this record is that the I.J. determined that Mr. Peterson had met the statutory predicates under the founding rule. Because the I.J. analyzed Mr. Peterson's case pursuant to the founding rule, this Court is bound to do the same. Applying the rule, the immigration judge erroneously concluded that the presumption of United States citizenship had been rebutted because Mr. Peterson had been shown not to be a citizen prior to the time he turned 21. We think the correct reading of the statute is that unless it's established in some formal judicial proceeding prior to the time the individual turns 21, the foundling is a U.S. citizen, and that becomes irrebuttable once he or she turns 21. And that reading is supported by the INS interpretation of this rule, by the minimal legislative history out there, and the statutory text. But even if it is sufficient for the purposes of the founding rule for the individual's noncitizenship to be shown in a proceeding after he turns 21, that showing must at minimum be based on documents that were in existence before the cutoff date. In this case — Let me stop you for a second. The first part of your argument that says there has to be an adjudication prior to the age of 21, wouldn't that open the door to just anybody coming in and claiming, I qualify for this and nobody said otherwise before I turned 21, so I'm home free? I think if you look at the text of the founding rule, that was Congress's intent. But don't you at least have to establish an entitlement to claim benefit of the founding rule? That is, that you are, in fact, a person of unknown heritage found in the United States born at the age of 5 years. Otherwise, somebody could step off the boat and say, hey, they didn't prove before I turned 21 that I wasn't somebody who was a foundling here, so I'm a citizen. Yes, Your Honor. The person does have to show that he or she has met the statutory predicates of the family. So that adjudication can come after the age of 21. Yes. If the person, if the person is invoking the founding rule after the person turns 21. Trying to see what to do. Yes. So this adjudication is timely for that purpose, even though he may already have passed the age of 21. Right. Okay. Also, it seems that there is a little bit of arguing past each other in this case, because you say that the I.J. definitely relied on the founding rule, the government's brief says the opposite. What the I.J. does say is that he's trying to claim citizenship under that section, and then the I.J. recites that section, but then goes on to say that basically, and I assume that the I.J. is talking about jurisdictional fact, is saying that the government proved that he was born in Mexico, in effect. So it's not clear to me that the I.J. really was invoking the founding rule, as you read the decision, and I'd appreciate your comments on that. Yes, Your Honor. The I.J. in invoking the founding rule then goes on to say that. Say in invoking. I'm sorry, in citing. I'm not saying that the I.J. did invoke, where all the I.J. does is say that he claims it and then cites the rule. I'm sorry, Your Honor. I misstated myself. I misstated that. At Administrative Record pages 59 to 60, the I.J. cites the rule, or sets out the rule, and then says that in this case, it was shown previously, echoing the language of the statute, that Mr. Peterson had been found to be born in Mexico. In addition, originally what happened in this case is that the government initially rested on the I.213, to prove alienage. After Mr. Peterson invoked the founding rule, the I.J. questioned him at Administrative Records pages 80 to 82 about whether he had any knowledge of his natural parents. At that point, Mr. Peterson testified that he was abandoned here, that he was adopted in the United States, that he has no knowledge of his birth parents, and that he does not know whether they were lawful permanent residents or citizens of the United States, and that he had no idea about the amount of time they might have spent in the United States prior to or during his birth. The I.J. then gave the government a ten-minute recess to allow the submission of additional documents in response to the founding rule claim. Realizing the need to submit documents that predated Mr. Peterson's 21st birthday, the government then submitted the three unauthenticated documents in this record, and those are the temporary resident card, the C.I.S. printout, and the visa petition notice, and these are the only documents in the record that pertain to the period prior to the time Mr. Peterson turned 21. The I.J. then, on the record at A.R. 86, expressly recognized the applicability of the founding rule, telling Mr. Peterson, and I quote, I don't know from whom you received this legal advice, but they did cite the right section of law, Section 301F of the I.N.A. Then, applying the founding rule, the only documents that the I.J. expressly considered were those later submitted unauthenticated documents which predated Mr. Peterson's 21st birthday. So taking all of this as a whole, the only way to read the I.J.'s oral decision and the record is that he did find that Mr. Peterson had triggered the statutory predicates of the founding rule and that he erroneously then found that the founding rule had been rebutted based on inadmissible, unauthenticated documents. I had intended to save some time for rebuttal, but I wanted to say in conclusion for this part that it's not necessary for this Court to reach the second question because the first question, the aggravated felony question, is a clear error of law under this Court's precedence, and that would be sufficient for the Court to grant the petition for review, vacate the removal order, and terminate Mr. Peterson's proceedings and allow him to be released from his 20-month-long detention. Thank you. Thank you. We have about a minute left for rebuttal. Counsel? Good morning, Your Honors. William Irv from the Department of Justice. Excuse my tardiness. I was in another court. I understand you were in another court. Yes. Your Honors, I think what we need to look at here is a couple of things. I'm surprised they started off with the aggravated felony claim. What we need to be done in any immigration proceeding is establish that the individual is an alien, if he's illegally here, and then if there's any forms of relief available for him, and what his grounds of removability are. The government submits, Your Honor, that there's no genuine issue of material fact as to the question of whether or not the petitioner is a national or a citizen of the United States. In fact, a review of this record would clearly establish by clear and unequivocal and convincing evidence that the petitioner, in fact, is an alien who unlawfully entered the United States and is not a national or a citizen. Specifically, I would direct the Court's attention to a variety of documents and statements that the petitioner made and himself submitted to the IJ and also to the Board of Immigration Appeals. Specifically, the petitioner admitted that he was a lawful permanent resident since 1989 based on his application for legalization. Second, we have a court-delayed birth certificate from the State of Utah that clearly states the petitioner was born in Mexico. Third, we have an admission by petitioner to a deportation officer that he was born in Mexico, that he entered the United States unlawfully without inspection in 1979, and he's been a lawful permanent resident since February 27, 1989. In addition, there's a form apparently from the petitioner's legalization file that clearly states the petitioner was smuggled into the U.S. by a midwife with the knowledge of his natural parents. Fifth, in 1989, the petitioner's application for naturalization was denied for lack of proof. Sixth, in 1985, the INS approved an alienating relative immigrant visa for petitioner based on his status as an adoptive child of U.S. citizens. Seventh, in 1987, petitioner was issued a legal resident card based on his legalization application. Based on those facts, Your Honor, we would submit that the government has met its burden of proving aliage by clear, unequivocal, and convincing evidence. Let me make sure I understood you. Your view is that the analysis of the theft conviction is icing on the cake and irrelevant, basically? No, no, it's an important element. But what has to be established is the government has to meet its burden of alienage. Correct. And the burden shifts over to the alien to establish whether or not he's here lawfully or not. He is an LPR who is now, before committing his crime, was, finally after a series of adjustments, immigration status, was lawfully in the United States, but that has been taken away based on his conviction. Correct. But in a way, if you start at the other end, and I'm not saying how it might come out, but if there is no conviction, qualifying conviction, then the predicate just kind of is, in effect, I agree with your point, Your Honor. Okay. But the government would like to bring out these points as they proceeded in the proceedings and whatever. In addition, Your Honor, Petitioner is not a foundling under 301F of the Immigration and Naturalization Act for a couple simple reasons. One, he was not found within five years of entering the United States. And a clear statutory reading of the statute and applying the facts of this case would establish that. He, in fact, did not come to the attention of anybody in the United States, any court, until he was adopted by his parents, and that was decreed by the State of Utah, when he was approximately 10 years old. Are you suggesting as a factual matter that he didn't enter the country until after he was five? No, no. The record establishes that he was found by somebody. The issue is who has to do the finding. That's correct, Your Honor. But I think what you have, the foundling in Section 301 is for the notion of basically babies put at doorsteps, in which nobody knows anything about this child being found. And so there's no ---- But take the family, if it's called foundling exception, you've got the babies found at the doorstep. Does the family that takes the baby in from their doorstep have to rush to adoption court before age of five for this statute to apply? I would argue that they would have to be brought to the attention of someone. I mean, the clear reading is the people whose doorstep they were put on. That's who finds them, in a literal sense, if there is such an event that actually occurs. I don't know if I would agree with that reading. Which is really getting to my question. What is it that supports the proposition that the statute, when it says found in the United States, means found and brought to the attention of some public official? That's correct. Well, what's the support for that? The statute says found. It doesn't say found and reported to the INS or reported to the adoption authorities or anything else. It just says found. We don't have a situation of the child being found in the notion of the basket. What the record establishes is the alien, with the consent of the natural parents, was brought to the United States when he was 10 days old and was adopted. And an important point for this Court to remember is this child was adopted with, and it clearly specifically states it in the adoption consent decree in the State of Utah, that he was adopted with the consent of the natural parents. So we don't have a lost child. We don't have a foundling. But it doesn't say, you know, it's interesting because the language found in, of course, we find in our other immigration statutes, as you know, the illegal entry statutes, which we've kind of parsed as to what it means to be found in the United States. And I'm wondering if, and to be found there, you don't have to be lost. In other words, the person's not lost just because he crossed the Mexican border and then was found in the United States. I'm just wondering, do you think those statutes, those other immigration statutes that are part of this whole scheme, give us any clues as to how we ought to interpret the language here? I would say that this is a fairly specific and particular section of the INA, one that has not been applied very often, and I don't know many cases that have done it. I would say that this is my own assumptions, and I can support this later with the letter brief, if you'd like, that Congress is really looking at the actual child who is lost, who has been displaced at the doorstep. That's the unknown parentage part. That's the unknown parentage. And I understand you're making that argument. My question is coming from it sounded to me like you were asking or imposing an additional requirement. That is, that this child be brought to the attention of the authorities before the age of 5. That's another one of our arguments. And I don't see that. I don't see any support for that in the statute. So when I ask the question, where's the support, I really am not looking for you to go back and say, well, this kid really wasn't of unknown parentage. Okay. Suppose you've got a child that really comes out of nowhere, found on the doorstep at age 3 months. The parents, new parents, take him in and don't do anything to report him to the authorities until he's 12. Are you telling us that the statute cannot apply to that person? And if so, what's the basis for that interpretation? Merely my plain reading of the statute, Your Honor. And I would point out, of course, that on the question of nationality and citizenship, you had de novo review on the legal issue in this matter. However, that's only the first part of the statute. I'm saying that he's missing the statute on both elements, the five plus the unknown parentage. The record clearly establishes we don't have a situation of unknown parentage. So really you're saying because there was this adoption procedure from real parents, even though he may not know his parents, that the parents are not unknown as a matter of law? That's correct, Your Honor. And those... In order to figure that out, would we need to look behind sealed documents that we don't have access to? How do we know that, in other words? I think we can read the – we don't even – these aren't even government-submitted documents in the sense of from an A file or authenticated documents. These are actually judicially-decreed documents, I mean, decisions from the state court. And I really think we don't need to go behind any further from those decisions, from those orders themselves. You may, in other circumstances, but the fact that these are court-ordered documents, I think they clearly speak for themselves on that issue. Turning to the issue of whether or not the petitioner is an aggravated felon, clearly I would submit, as the petitioner says, you would apply the categorical approach to determining whether or not his crime is an aggravated felon and a theft crime under the Immigration and Naturalization Act. I would turn the Court's attention to the statute, the Utah statute, in which the alien was convicted. And it clearly requires in the statute that the item be stolen. And it's in the title of the document, of the code, and in Section 2 of the code in which the ---- Can you violate the substance of the Utah Act without intending to deprive the owner of the use and benefit of the property? I would turn to the statute. Yes, isn't it? Not if you know ---- You're talking about the attempt right now. I'm talking about the substantive statute. Isn't it correct that you can violate that statute without intending to deprive the owner of the use and benefit of the property? I would say a reading of the statute with the stolen is the language of stolen would indicate no, that you could not. If you're asking me without reading, without an interpretation of the statute, perhaps it may be that's not what we have in this situation, Your Honor. It's a hypothetical. Somebody hands you something. They know it's stolen. They tell you nothing about it. Here, hold this for me. It turns out it is stolen, but you didn't know that. Could that violate the statute? The answer is yes, isn't it? I would have to answer yes to that question, yes. That answers the first question, doesn't it? Which is what, Your Honor? That you can violate the statute without intending to deprive the owner, blah, blah, blah. Right. But the Utah court interpreting its own statute in Bensford said the fact that you have the language of stolen and you have a conviction under the language of stolen would indicate and establish that you have the crime being committed for a stolen item. But that begs the question of intent. If you read the Utah case carefully, they didn't really answer the question we have to answer, did they? And that is the intent question. No, I think, Your Honor, with all due respect, I would disagree with that. I mean, it appears that some of that is indicative. However, they clearly state that if you have the word stolen in the statute, you have to have intent, because the stolen is what drives the whole statute, the language itself. Because it would be meaningless. If you had a statute that said stolen and you don't have the intent to steal, then the notion of stolen would be meaningless. And as you know, the presumption is that the State legislatures, as the Federal legislatures, do not put in terms that are meaningless in their statutes. I tried one last time. You can be convicted of the substance of this offense even if you didn't know the item was stolen, if the State in a Utah prosecution can establish that you should have known that it was stolen. That's correct, isn't it? That's correct, Your Honor. So, ergo, you can be convicted under this statute without knowing that the item was stolen. With all due respect, Your Honor, I believe I agree with that, and I thought I'd answered that one earlier. Well, doesn't that kind of rip out the intent part? If you should have known but were ignorant of the stolen condition, can you fairly say that the statute inherently requires intent to possess something that was stolen if you didn't really know it was stolen? Now we're into the modified court categorical approach in that instance. But that's not what we have in this case. We have the alien who took the car. The car was given to him. He drove it in a chase with the police, and the car was totaled. That's not what he pled to. No, he pled to the second part. Let's suppose the definition of aggravated felony is possession of a kilo or more of marijuana. You're found and charged with that, but you plead to possession of three grams. That's what we would look at, right? That's correct, Your Honor. That's correct. Can't look at the underlying. That would be the modified categorical approach. Okay. Anything else? In summation, Your Honors, I would point out that we believe that there's no genuine issue of material fact regarding the Petitioner's naturalization or citizenship. Second, he's clear and by clear and convincing evidence he's been established to be an alien. And third, that his conviction is an aggravated felony as defined under the INA and this Court's authorities. All right. Thank you for your argument. Thank you for your time. We're coming from one courtroom to another. Do you have anything to add? Steve v. Bassford was decided under a now-repealed predecessor statute. The Court based its analysis in that case, which was dicta in any case, on the language intent to procure or pass title, which is no longer part of subsection 2, which is the statute under which Mr. Peterson was convicted. Also, none of the documents, supplemental documents that opposing counsel has referred to can be properly considered by this Court because the IJ didn't consider them, the BIA didn't consider them, and the BIA couldn't have considered them under its own regulations. I'd also like to point out that just because a person is an LPR does not mean that he cannot be a citizen by operation of law. Quickly, I'll point the Court to the cases Chau v. INS and Scales v. INS. In those cases, the Petitioner had either the status of LPR or of a person under an immigrant visa. In those cases, they made citizenship claims. Finally, there is a misstatement of fact. Mr. Peterson was adopted in 1980 when he was 2 years old, not 5 years old. And I think that's about it because I'm out of time. Thank you. Thank you for your argument. Thank both sides for their arguments. The case disargued will be submitted for decision, and the Court will stand in recess. All rise. Thank you.
judges: Hawkins, McKeown, Clifton